**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LOIS YATES and PATRICK DUNN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN NATIONAL** | ) | 1:18-cv-189-HSO-JCG |
| **INSURANCE COMPANY, and JIM** | ) | |
| **WILSON & ASSOCIATES, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

### I.     INTRODUCTION

Plaintiffs, Lois Yates and Patrick Dunn, file this Title III, ADA action, pursuant to 42 U.S.C.  §12181, et. seq. In Count One of the Complaint, Plaintiffs seek to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiffs seek to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the establishment to be readily accessible to and usable by individuals with disabilities. In Count Five, Plaintiffs seek to enjoin Defendants to remediate their website that fails to integrate an accessible platform to be usable by disabled individuals. In Count Six, Plaintiffs seek to enjoin Defendants' failure to take the necessary steps to ensure Plaintiffs are not denied services, segregated or otherwise treated differently than other

individuals who do not have disabilities through the use of the mobile software applications.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.     Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.     Venue is proper in this Court, the United States District Court for the Southern District of Mississippi pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.     Plaintiff, Lois Yates, has malignancy (more commonly known as "cancer") in addition to severe lung damage and chronic obstructive pulmonary disease. As a result, Ms. Yates requires the use of mobility aids for locomotion. The extent of Ms. Yates' physical disabilities limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work; all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Yates is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that she has a physical impairment substantially limiting one or more major life activities.  42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.     Plaintiff, Patrick Dunn, was involved in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair. The extent of Plaintiff's physical problems limits his ability to care for himself, perform manual

tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Plaintiff is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; see also, 28 C.F.R. § 36.104.

5.   Defendant, American National Insurance Company, (hereinafter "American National"), is a company that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief American National Insurance Company, "owns" the real property and its improvements in which Edgewater Mall is located at 2600 Beach Blvd., Biloxi, MS 39531. 42 U.S.C. § 12182. Edgewater Mall is a commercial establishment in that it is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment features the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options to the public, which qualifies Edgewater Mall as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6.   Defendant, Jim Wilson & Associates, LLC, (hereinafter "Jim Wilson"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Jim Wilson & Associates, LLC, is the "developer" and "operates" the Edgewater Mall establishment located at

2600 Beach Blvd., Biloxi, MS 39531. 42 U.S.C. § 12182. Edgewater Mall is a commercial establishment in that it is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment features the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options to the public, which qualifies Edgewater Mall as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

7.    All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendants are citizens thereof.

8.    Plaintiff Lois Yates resides in Biloxi and lives approximately 4 miles from Edgewater Mall. She has been to Edgewater Mall many times because it is a short and easy drive from her home when she wants to go shopping. Plaintiff intends to continue going to Edgewater Mall, because she wants to enjoy the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options. Ms. Yates does not know exactly when she will go back to Edgewater Mall because she has not planned out every trip for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*"). Ms. Yates definitely intends to return to Edgewater Mall, however, not only to shop, eat, and enjoy other activities,

but also to see if Edgewater Mall will do the repairs to become ADA compliant and will continue to do so in the future to ensure Defendants maintain their shopping mall to accessibility standards. Ms. Yates will continue to return even after the repairs are made because Edgewater Mall is a short, easy drive from her home and is the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options.

9.  Plaintiff, Patrick Dunn travels to Biloxi at least once a year and often more than that. He lives in Andalusia, Alabama, approximately 190 miles from Biloxi, which is a vacation and entertainment destination. Mr. Dunn enjoys vacationing in Biloxi, Mississippi because he enjoys the different types of entertainment Biloxi offers as well as the nightlife. Mr. Dunn enjoys the social activities and entertainment whether it is playing casino games, enjoying the night life and entertainment at the resorts that offer various types of social activities and entertainment, or going shopping at the variety of stores in Biloxi. At least once a year Mr. Dunn goes to Edgewater Mall because it is just a short drive from the resorts he stays in and it is the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options. Mr. Dunn enjoys going to Edgewater Mall, which is subject to this action. Mr. Dunn will return not only to shop and dine at Edgewater Mall, but also to confirm compliance with the ADA by Edgewater Mall. Mr. Dunn does not know exactly when he will go back to Edgewater Mall because he has not planned out every trip for the rest of his life. Such specific planning is not necessary to invoke the

ADA. See, *e.g.* <u>*Parr v. L & L Drive Inn Restaurant*</u> 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and <u>*Segal v. Rickey's Restaurant and Lounge, Inc*</u>. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*"). Mr. Dunn definitely intends to return to Edgewater Mall, however, not only to shop, eat, and enjoy other activities, but also to see if Edgewater Mall will do the repairs to become ADA compliant and will continue to do so in the future to ensure Defendants maintain their shopping mall to accessibility standards. Mr. Dunn will continue to return even after the repairs are made because Edgewater Mall is a short drive from the resorts he stays in and is the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options.

10. Because of the barriers described below in paragraph 23 and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendants' premises on the basis of their disabilities.

11. Plaintiffs accordingly, have Article III standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' establishment is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) they have suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendants' practices and procedures described throughout this Complaint, and by Defendants' denial of the use of the establishment for their full

and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 21.

## II.     PLAINTIFFS' CLAIMS

**ADA, Title III**

12.  On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

13.  Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a shopping mall featuring more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options to the public. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

**Defendants' Existing Establishment Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

14.  Plaintiffs are informed and believe based on publicly available information that the Edgewater Mall establishment located at 2600 Beach Blvd., Biloxi, MS 39531, was originally constructed in 2007.

15.  Plaintiffs are further informed and believe based on publicly available information

that the Edgewater Mall establishment located at 2600 Beach Blvd., Biloxi, MS 39531, underwent alterations and/or improvements in 2010 and as recently as 2018.

16. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28  *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28  *C.F.R.*  § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

17. New construction and alterations must comply with either the Justice Department's

1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made

accessible in accordance with the 2010 Standards."

18. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction**

19. The Defendants have discriminated, and continue to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Edgewater Mall establishment in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

20. As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' establishment. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

21. Plaintiffs have definite plans to return to the Edgewater Mall establishment in the future, as described in paragraphs 8 and 9. Plaintiffs will return to Edgewater Mall

within the next few months not only to enjoy the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options, but also to see if Edgewater Mall has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so even when Edgewater Mall is repaired. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendants' workers at the establishment use the physical architectural elements of the establishment. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of their disabilities. The Eleventh Circuit, held in _Houston v. Marod Supermarkets_, 733 F.3d 1323 (11th Cir. 2013), that when architectural barriers have not been remedied "_there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store._" Additionally, "_[A]n alleged constitutional infringement will often alone constitute irreparable harm._" _United States v. Arizona_, 2011 WL Case 1:11-cv-01804-TWT at *19; see also _KH Outdoor, LLC v. City of Trussville_, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting _Elrod v. Burns_, 427 U.S. 347, 373 (1976) (_finding "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."_)). Due to the definiteness of Plaintiffs' future plans to continue visiting the subject

establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

22. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

23. Plaintiffs have been to and throughout the establishment from the parking areas, to the entrances, from the entrances to and throughout the restrooms, the restrooms themselves; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendants' establishment located at 2600 Beach Blvd., Biloxi, MS 39531, more commonly known as "Edgewater Mall", violates the ADA in particular but not limited to:

A. Defendants provide a parking area at Dillard's nearest Raising Cane's with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

   (1) Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in

all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

B.  Defendants provide a parking area at Dillard's nearest Raising Cane's with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates

individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the

parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot

obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**C.** Defendants provide a parking area at Dillard's nearest Raising Cane's with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

**(2)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

**(6)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both

sides of the ramp and otherwise conform with the applicable standards for accessible design;

(7) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

(8) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

(9) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface.

D. Defendants provide a parking area at Dillard's nearest Raising Cane's with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services

provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

**(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**E.**  The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**F.**  The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**G.**  Defendants provide a parking area at Dillard's nearest Stein Mart with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in

all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

(3) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**H.** Defendants provide a parking area at Dillard's nearest Stein Mart with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals

with disabilities to inferior benefits of the goods and services provided at Defendants'
place of public accommodation which includes but is not limited to the following
failures of Defendants:

(1) Defendants fail to maintain the parking area and its associated accessible
route in conformance with the ADA Standards for Accessible Design in
all the ways that are required to be readily accessible to and usable by
disabled individuals which includes but is not limited to van parking
spaces failing to be located on the accessible route to the entrance which
has the discriminatory effects of rendering the parking spaces and its
associated elements as unusable by disabled individuals;

(2) The parking area fails to maintain the required amount of accessible van
accessible parking spaces, including its associated access aisle, in operable
condition by conforming with the ADA Standards for Accessible Design
so that the van parking space measures 132 inches wide minimum with
an adjoining compliant access aisle that measures 60 inches wide
minimum, or alternatively a 96 inch wide space with an adjoining 96 inch
wide access aisle, and connects to an adjoining accessible route to the
entrance of the establishment;

(3) The parking area fails to maintain the required amount of accessible van
parking spaces, including its associated access aisle, in operable condition
by conforming with the ADA Standards for Accessible Design so that the
van parking spaces adjacent access aisle extends the full length of the

parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot

obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

I.    Defendants provide a parking area at Dillard's nearest Stein Mart with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1)    Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

(2)    The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

(3) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

(4) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

(5) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    a.  The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

(6) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both

sides of the ramp and otherwise conform with the applicable standards for accessible design;

**(7)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

**(8)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

**(9)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface;

**J.** Defendants provide a parking area at Dillard's nearest Stein Mart with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at

Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

**(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**K.**   The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**L.**   The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**M.**   Defendants provide a parking area at the west mall entrance with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in

all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

N.   Defendants provide a parking area at the west mall entrance with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals

with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the

parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot

obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**O.**   Defendants provide a parking area at the west mall entrance with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)**   Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

**(2)**   The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

**(6)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both

sides of the ramp and otherwise conform with the applicable standards for accessible design;

(7) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

(8) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

(9) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface;

P. Defendants provide a parking area at the west mall entrance with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at

Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

**(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**Q.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**R.** The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**S.** Defendants provide a parking area at the main mall entrance nearest Stein Mart with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in

all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**T.** Defendants provide a parking area at the main mall entrance nearest Stein Mart with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates

individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the

parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot

obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

U.   Defendants provide a parking area at the main mall entrance with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1)   Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

(2)   The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

**(6)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both

sides of the ramp and otherwise conform with the applicable standards for accessible design;

(7) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

(8) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

(9) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface.

V. Defendants provide a parking area at the main mall entrance with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at

Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

    **(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

    **(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**W.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**X.** The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**Y.** Defendants provide a parking area at JCPenney nearest Murphy Oil with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

    **(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in

all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**Z.** Defendants provide a parking area at JCPenney nearest Murphy Oil with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates

individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the

parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot

obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**AA.** Defendants provide a parking area at JCPenney nearest Murphy Oil with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

   **(1)** Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

   **(2)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

**(6)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both

sides of the ramp and otherwise conform with the applicable standards for accessible design;

**(7)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

**(8)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

**(9)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface.

**BB.** Defendants provide a parking area at JCPenney nearest Murphy Oil with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services

provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

**(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**CC.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**DD.** The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**EE.** Defendants provide a parking area at Belk nearest the movie theater with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

(3) The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming

with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

FF. Defendants provide a parking area at Belk nearest the movie theater with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access

by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition

by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(7)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise

maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

GG. Defendants provide a parking area at Belk nearest the movie theater with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

(2) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA

Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the landings are level and measure 60 inches long minimum and at least as wide as the ramp;

(6) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both sides of the ramp and otherwise conform with the applicable standards for accessible design;

(7) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

(8) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

(9) The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface.

HH. Defendants provide a parking area at Belk nearest the movie theater with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible

spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

**(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**II.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**JJ.** The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**KK.** Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking structure and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking structure fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

(3) The parking structure fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking structure fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by

conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking structure fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking structure fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking structure fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

LL. Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA

accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

(1) Defendants fail to maintain the parking structure and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

(2) The parking structure fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

(3) The parking structure fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable

condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

(4) The parking structure fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

(5) The parking structure fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces maintain a ground surface that is level;

(6) The parking structure fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

(7) The parking structure fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable

condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**MM.** Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to providing all of the necessary components on the ADA accessible route to the entrance including without limitation ramps, walking surfaces, and other associated elements which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals.

**(2)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12.

**(3)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48.

**(4)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there is no changes in level other than the running slope and cross slope.

**(5)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be usable by the disabled which includes but is not limited to providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measure 60 inches long minimum and at least as wide as the ramp;

    **a.** The accessible routes ramp run fails to maintain a landing at the top and bottom of the ramp in operable condition by conforming with the ADA Standards for Accessible Design so that the

landings are level and measure 60 inches long minimum and at least as wide as the ramp;

**(6)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that handrails are provided on both sides of the ramp and otherwise conform with the applicable standards for accessible design;

**(7)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that edge protection is provided on each side of the ramp run and each side of ramp landings;

**(8)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the floor or ground surface of the ramp run or landing extend 12 inches minimum beyond the inside face of a handrail complying with 505;

**(9)** The accessible route fails to maintain a ramp and its associated components in operable condition by conforming with the ADA Standards for Accessible Design so that a curb or barrier is provided that prevents the passage of a 4 inch diameter sphere, where any portion of the sphere is within 4 inches of the finish floor or ground surface.

**NN.** Defendants provide a parking structure with parking spaces that have routes connecting the parking spaces to an entrance of the establishment for able-bodied

individuals, but fails to provide that same level of access by providing an ADA accessible entrance with an accessible route from the accessible spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation which includes but is not limited to the following failures of Defendants:

> **(1)** Defendants fail to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining a ground surface at the door maneuvering clearance that has a level ground surface;

> **(2)** Defendants fail to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the casino entirely;

**OO.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**PP.** The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**QQ.** Defendants provide a men's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1)   The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2)   There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3)   The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)**    The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)**    The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)**    The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the

toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**RR.** Defendants provide a lavatory in the men's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

(4) The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

SS. Defendants provide a women's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

(1) The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated

elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

**(2)** There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

**(3)** The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the

water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a minimum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals

which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in a accessible and usable condition by the disabled;

**(11)** Defendants fail to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities;

**TT.** Defendants provide a lavatory in the women's restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

    **(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

    **(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals;

    **(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5) There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6) There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

24. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

25. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

26. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to provide equal use of their facility, services and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**

**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

27.   Plaintiffs incorporate by reference and re-allege all the paragraphs above.

28.   The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

29.   The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

30.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and

communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. § 12101(a)(5).

31.    To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

32.    By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

33.  For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both* tangible barriers *(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and* intangible barriers *(emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

34.  Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."*

35.  Accordingly, a place of public accommodation must modify a policy or practice that

has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

36.   As detailed below, Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated or otherwise treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have discriminated against Plaintiffs. Defendants will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

37.   Defendants either have no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

38.   Defendants' use of their establishment, and their practices at the Edgewater Mall

establishment located at 2600 Beach Blvd., Biloxi, MS 39531, literally create barriers and in so doing deny Plaintiffs the full and equal enjoyment of the establishment. Those practices include:

    **a)** Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from its parking area, which means that Plaintiffs are forced to depend on assistance from a third party to get into Edgewater Mall, whereas non-disabled conveniently access the establishment from the parking areas;

    **b)** Defendants fail to provide an accessible route to and throughout the establishment that is accessible to the disabled, which means that Plaintiffs cannot travel and move into or throughout the establishment in the way non-disabled people can. Accordingly, they cannot fully and equally use and access Edgewater Mall and all of its goods and services as the non-disabled can;

    **c)** Defendants make their toilet facilities throughout the establishment inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiffs and other disabled individuals cannot relieve themselves or move into and throughout the restroom, which the able-bodied can freely do;

39.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

40.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

41.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its retail store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the goods and services offered at the establishment, as described above in detail.

42.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

43.   To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

44.   A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully

comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' establishment consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Pier Park establishment; (3) Defendants will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

45. As pled above, American National Insurance Company "owns" the real property and its improvements located at 2600 Beach Blvd., Biloxi, MS 39531, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

46. As pled above, Jim Wilson & Associates, LLC, is the "developer" and "manages" the establishment located at 2600 Beach Blvd., Biloxi, MS 39531, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

47. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

48. By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendants' policies, practices, and procedures.

49. Plaintiffs have been obligated to retain the undersigned counsel for the filing and

prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

50. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

51. Plaintiffs incorporate by reference and re-allege all the paragraphs above.

52. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

53. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

54. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation,*

*independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. §
12101(a)(7). Congress even found that: "*the continuing existence of unfair and
unnecessary discrimination and prejudice denies people with disabilities the opportunity to
compete on an equal basis and to pursue those opportunities for which our free society is
justifiably famous, and costs the United States billions of dollars in unnecessary expenses
resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

55.    In response to these findings, Congress explicitly stated that the purpose of the ADA
is to provide "a clear and comprehensive national mandate for the elimination of
discrimination against individuals with disabilities" and "clear, strong, consistent,
enforceable standards addressed discrimination against individuals with
disabilities." 42 U.S.C. § 12101(b)(1)-(2).

56.    The ADA provides, inter alia, that it is discriminatory to subject an individual or
class of individuals on the basis of a disability "to a denial of the opportunity of the
individual or class to participate in or benefit from the goods, services, facilities,
privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

57.    The ADA further provides that it is discriminatory "to afford an individual or class
of individuals, on the basis of a disability ... with the opportunity to participate in or
benefit from a good, service, facility, privilege, advantage, or accommodation that is
not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

58.    Congress enacted the ADA in light of its findings that "individuals with disabilities
continually encounter various forms of discrimination, including outright
intentional exclusion, the discriminatory effects of architectural, transportation, and

communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

59.     To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) (*"It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation"*).

60.     For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public

accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

61. The keystone for this analysis is Defendants *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

62. Plaintiffs, Lois Yates and Patrick Dunn, were denied full and equal access to the Edgewater Mall establishment. Plaintiffs specifically and definitely want to return to the Defendants' establishment to enjoy the only enclosed mall on the Mississippi Gulf Coast providing more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks, and dining options that are offered at Edgewater Mall. More specifically, Plaintiffs want to be afforded the same level of service and that same shopping experience that is offered to non-disabled individuals and which Defendants have failed to provide to Plaintiffs as follows: Defendants failed to provide Plaintiffs the same opportunity to independently participate in and enjoy the shopping experience that features more than 90 specialty stores offering everything from fabulous classic styles in fashion to the latest of today's looks and dining options that Edgewater Mall is known for; Defendants failed to provide accessible parking and accessible routes into Edgewater Mall for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of their cars and onto their wheelchairs, cannot independently travel from the parking area into Edgewater Mall, cannot determine if there is a usable parking

space, and must determine by trial and error how they are to park and move into Edgewater Mall; Defendants failed to provide an accessible route to and throughout the establishment for disabled individuals, which means Plaintiffs cannot independently travel into and move throughout the establishment; Defendants failed to provide accessible restrooms for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and use the other elements of the restrooms; and all the foregoing failures by Defendants inhibited Plaintiffs from having the same experience that non-disabled individuals have when at the Edgewater Mall establishment.

63.   In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

64.   The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate."

42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

65.   Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected*." *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

66.   Defendants discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Edgewater Mall.

67. Defendants' conduct and Defendants' unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiffs and others similarly situated unequally to the status of a second-class citizen.

68. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

69. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

70. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facility for ADA compliance)*

71. Plaintiffs incorporate by reference and re-allege all the paragraphs above.

72. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such*

> *subsection in accordance with standards set forth or incorporated*
> *by reference in regulations issued under this subchapter.*

73.  Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

74.  To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to*

*others.*" *Id.*

75.  As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

76.  To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

77.  Defendant, American National Insurance Company, "owns" the Edgewater Mall establishment and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

78.  Defendant, Jim Wilson & Associates, LLC, is the "developer" and "operator" of the Edgewater Mall establishment and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy

after January 1993.

79.  Defendants were and are required to design and construct the Edgewater Mall establishment to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *their establishment to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct its establishment in compliance with the ADA during planned alterations as described throughout this Complaint.

80.  According to Defendants' own publicly available information, Defendants chose to design their establishment in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically design, construct and maintain its establishment without any regard to the disabled. Defendants' systematic design of their establishment fails to afford disabled individuals the same experience that is afforded to individuals without disabilities.

81.  To date, the Defendants' discriminating actions continue.

82.  Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

83.  Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**COUNT FIVE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302 (e)(1)(i)-(ii)**

*(Failure to Integrate Website Accessibility)*

84.  Plaintiffs incorporate by reference and reallege all the paragraphs above.

85.  The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101– 485(III), 101st Cong., \*1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

86.  Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. 12101(a)(5).

87.  Legislative history indicates that websites of public accommodations are covered by Title III. Although the internet did not exist when Congress enacted the ADA in 1990, the legislative histories state that Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations.  Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations through their websites. *See Nat'l Fed'n of the Blind v. Scribd*, 97

F.Supp. 3d 565, 574 (D. Vt. 2015).

88.  The Justice Department has long affirmed the application of Title III to the websites of public accommodations. *The statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also <u>*Netflix*</u>, 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." <u>Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,</u>* 37 F.3d 12, 20 (1st Cir. 1994).

89.  Today, internet technology enables individuals to participate actively in their community and engage in virtually all forms of commerce from the comfort and convenience of their home, to the extent that virtual reality through the internet is almost as important as physical reality in brick-and-mortar constructed public accommodations, in pursuing commerce from public accommodations. That websites were not explicitly written into the ADA at its passage in the early 1990s but are nevertheless covered does not indicate ambiguity in the ADA, but rather the breadth of the ADA. <u>*Andrews v. Blick Art Materials, LLC*</u>, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

90.  Defendants did not allow Plaintiffs to use the website in the same manner as individuals without disabilities, because the website fails to integrate alternative platforms that enable disabled individuals who have limited use of their hands the

opportunity to use the alternative platforms to navigate and select items on the page. The able-bodied online website user can only use a mouse to navigate, whereas individuals who have limited use of their hands cannot use assistive technology to navigate through the website. Moreover, Defendants provide a plethora of services and associated benefits, including but not limited to: deals, dining options, shopping options, mall maps and directories, what's happening at the Edge, among other services to able-bodied individuals, but fails to provide those same services to disabled individuals which relegates and otherwise segregates disabled individuals to inferior benefits and services of Edgewater Mall.

91. The design of Defendants' web site impedes Plaintiffs and others similarly situated from accessing the services, privileges and accommodations afforded able-bodied patrons through the web platform. The website fails to integrate alternative access methods that allow a person with limited manual dexterity to access the information and navigate the web site without being able to use a mouse. That is, the website design does not provide for functions to be carried out using a keyboard or voice input. On its website, Defendants provide a plethora of services and associated benefits, including but not limited to: deals, dining options, shopping options, mall maps and directories, what's happening at the Edge, among other services to the general public, but fails to provide those same services to persons with disabilities. Such actions relegate and otherwise segregate persons with disabilities to inferior benefits and services offered by Edgewater Mall.

92. As pled previously, intangible barriers to access are prohibited, just as tangible barriers are prohibited.

93. The actions by the Defendants violate:

    a) 42 U.S.C. § 12182(a), because its actions deny Plaintiffs full and equal enjoyment of Defendants' goods and services;

    b) 42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiffs equal participation in goods and services offered by the Defendants;

    c) 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiffs are provided both separate and unequal benefits of Defendants' goods and services;

    d) 42 U.S.C. § 12182(b)(1)(B), because Defendants do not provide their goods and services in the most integrated setting appropriate;

    e) 28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the disabled Plaintiffs.

94. Plaintiffs do not allege that there are a particular set of mandatory regulations for websites that establish compliance or non-compliance as a matter of law. Plaintiffs plead, consistent with the Department of Justice determinations, that in achieving such conformance and usability of websites by individuals with disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

**95.** To date, the Defendants' discriminating actions continue.

**96.** As pled, Jim Wilson & Associates, LLC, is the "owner" of the public internet website edgewatermall.com and "operates" the world-wide websites services that are available to the public at Edgewater Mall. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web-based services, as alleged above. 42 U.S.C. § 12182.

**97.** Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

**98.** Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**COUNT SIX**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(2)(A)(iii)**
*(Failure to Provide Services Necessary to*
*Ensure Equal Access to Innovative Technology)*

**99.** Plaintiffs incorporate by reference and reallege all the paragraphs above.

**100.** The ADA was the most sweeping civil rights legislation since the Civil Rights Act of 1964. When it was enacted Congress had no conception of how the Internet would change global commerce. "[W]e were not communicating by e-mail, blog, or tweet;

we were not filling virtual shopping carts with clothes, books, music, and food; we weren't banking, renewing our driver's licenses, paying taxes or registering for and taking classes online. Congress could not have foreseen these advances in technology. Despite Congress' great cognitive powers, it could not have foreseen these advances in technology which are now an integral part of our daily lives. Yet Congress understood that the world around us would change and believed that the nondiscrimination mandate contained in the ADA should be broad and flexible enough to keep pace." *Achieving the Promises of the Americans with Disabilities Act in the Digital Age—Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

101. Since the internet plays such a critical role in the personal and commercial lives of Americans, excluding disabled persons from access to covered entities that use the internet and mobile applications as a means of reaching the public would defeat the purpose of this important civil rights legislation. In today's society, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods more effectively to the public and expand the services the public accommodation has to offer in new ways. These services that are provided via a public accommodation for web applications, mobile application, and hybrid applications ("mobile platform") also need to be provided to disabled individuals.

102. ADA Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods. 28 C.F.R. § 36.303(b). Auxiliary aids and services also includes acquisition or modification of equipment or devices, and other similar services and actions. 28 C.F.R. 36.303(b)(3)-(4).

103. The plain language of these statutory provisions applies to discrimination in offering the goods and services "of" a place of public accommodation or the services, programs, and activities "of" a public entity, rather than being limited to those goods and services provided "at" or "in" a place of public accommodation or facility of a public entity.

104. The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two. Defendants have chosen to provide a service through a mobile application to view and access deals, dining options, shopping

options, mall maps and directories, what's happening at the Edge, among many other services through the mobile platform. The Defendants communicate all of that to able-bodied individuals as a service. Yet, Defendants' use of their mobile application and the services they offer through the application does *not* communicate and provide services to the disabled individuals. This is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]" and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities.*" *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

105. The unlawful implementation of eligibility criteria in other contexts that are clearly covered by the Act is analogous to the Defendants' effective screening of Plaintiff from using its mobile app. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendants screened guests as they entered, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from*

*playing on a golf course or all individuals with cerebral palsy from attending a movie theater.*"). ("*An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matters is whether the good or service is offered to the public.* (<u>*Nat'l Fed'n of the Blind. Scribd Inc.*</u>, 97 F. Supp. 3d 565 (D. Vt. 2015). The Defendants' failure to permit or include assistive technology in relation to their mobile app directly and physically screens and prevents the Plaintiff from being able to use the mobile app, just as if Defendants in their establishment placed items outside the Plaintiffs' reach and said Plaintiffs cannot have the items unless Plaintiffs can get the items for themselves.

106. In our contemporary technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." <u>*Netflix*</u>, 869 F.Supp.2d at 200 (quoting <u>*Carparts,*</u> 37 F.3d at 20). (quoting <u>*Nat'l Fed'n of the Blind. Scribd Inc.*</u>, 97 F. Supp. 3d 565 (D. Vt. 2015).

107. Defendants diminish Plaintiffs' rights under the ADA to fully participate in all aspects of society, which is counter to Congress' goal. Defendants' ableism, as described throughout the Complaint, is excluding Plaintiff from equality of opportunity, full participation, independent living, and economic self-sufficiency and in doing so excludes Plaintiff from a plethora of goods and services that are offered through the mobile platform which includes but is not limited to the

following:

a) Defendants are excluding, denying services, and otherwise segregating Plaintiffs from all of the benefits and services Defendants offer through their mobile apps as a result of their failure to modify their mobile application platform to allow assistive technology, which includes, but is not limited to, voice recognition, alternative input methods, assistive touch functions, among other accessibility methods that Plaintiffs require, to compete on an equal basis and maintain independent self-sufficiency;

b) Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view deals through the mobile apps;

c) Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various dining options at Edgewater Mall through the mobile apps;

d) Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the various shopping options at Edgewater Mall through the mobile apps;

e) Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are

excluded from Defendants' services that enables individuals to view the various features and options at Edgewater Mall through the mobile apps;

**f)** Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view the mall map and/or directory through the mobile apps;

**g)** Defendants are excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to view what's happening at the Edge through the mobile apps;

**h)** Defendants are excluding, denying services, or otherwise segregating Plaintiffs, because unlike able bodied individuals, disabled individuals are excluded from Defendants' services that enables individuals to access and view all of the benefits of Edgewater Mall through the use of the mobile apps;

**i)** Defendants are excluding, denying services, and otherwise segregating Plaintiffs as a result of their failure to modify equipment, devices and/or other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

**j)** Defendants are excluding, denying services, or otherwise segregating Plaintiffs of all the goods and services offered on its mobile apps as a result of Defendants' failure to design their mobile apps that enable alternative assistive technology;

108. The design of Defendants' mobile app impedes Plaintiffs and others similarly situated from accessing the services, privileges and accommodations afforded patrons through the mobile app. The mobile app fails to integrate alternative access methods that allow a person with limited manual dexterity in their hands to access the information and navigate the mobile app.

109. The actions by the Defendants violate:

   a) 42 U.S.C. § 12182(a), because Defendants' actions deny Plaintiffs full and equal enjoyment of Defendants' goods and services;

   b) 42 U.S.C. § 12182(b)(1)(A)(i), because Defendants' actions deny Plaintiffs equal participation in goods and services offered by the Defendants;

   c) 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because Plaintiffs are provided both separate and unequal benefits of Defendants' goods and services;

   d) 42 U.S.C. § 12182(b)(1)(B), because Defendants do not provide their goods and services in the most integrated setting appropriate;

   e) 28 C.F.R. 36.303(c), because Defendants have failed to provide auxiliary aids and services where necessary to ensure effective communication with the disabled Plaintiffs.

110. Plaintiffs do not allege that there are a particular set of mandatory regulations for mobile applications that establish compliance or non-compliance as a matter of law. Plaintiffs plead, consistent with the Department of Justice determinations, that in achieving such conformance and usability of mobile apps by individuals with

disabilities, Defendants should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.0 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

111. To date, the Defendants' discriminating actions continue.

112. As pled above Jim Wilson & Associates, LLC, "owns" and "operates" the Edgewater Mall mobile application and its goods and services offered on the mobile app, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

113. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.


114. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Lois Yates and Patrick Dunn demand judgment against the Defendants on Counts One through Six and request the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin the Defendants to make their business practices consistent with ADA Title III in the future.

4. That the Court enter an order directing the Defendants to provide Plaintiffs full and equal access both to the Edgewater Mall experience and to the use of the Edgewater Mall facility, and further order the Defendants to maintain the required accessible features at the establishment so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

6.   That the Court enjoin the Defendants to remediate Edgewater Mall to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.   That the Court enter an order requiring that Defendants adopt and implement a website accessibility policy and take the necessary actions to make their website accessible to the Plaintiffs, as particularly described in Count Five;

8.   That the Court enter an order requiring Defendants to place on their homepage a statement concerning its website accessibility policy; provide training to all their workers and associates who write or develop programs or code; and test their website quarterly to identify and repair any incidence of nonconformance;

9.   That the Court enter an order requiring Defendants to adopt and implement a mobile application accessibility policy and take the necessary actions to make their mobile application accessible to the Plaintiff, as particularly described in Count Six;

10.   That the Court enter an order requiring Defendants to place on their mobile application a statement covering their mobile application accessibility policy; provide training to all their workers and associates who write or develop the programs and code for the mobile application; and test the mobile application quarterly to identify and repair any indication of non-conformance;

11.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

12. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 6th Day of June, 2018.

/s/

**BRADLEY D. MCADORY**
**BPR # MS-10545**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this 6th day of June, 2018 to the following:


**AMERICAN NATIONAL INSURANCE COMPANY**
attn.: Legal Department
One Moody Plaza
Galveston, Texas 77550

**JIM WILSON & ASSOCIATES, LLC**
c/o C T Corporation System
attn.: Registered Agent
645 Lakeland East Drive, Suite 101
Flowood, Mississippi 39232


/s/_____
**BRADLEY D. MCADORY**
**BPR # MS-10545**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*